IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE NOCO COMPANY, INC., <br> 30339 Diamond Pkwy #102, <br> Glenwillow, Ohio 44139 <br><br> Plaintiff, <br><br> v. <br><br> Shenzhen Dika Na'er E-Commerce Co., Ltd. <br> Room 1907-38-85, Guangyin Building, No. 38 <br> Futian South Road, Futian District <br> Shenzhen, China <br><br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 1:17-cv-02282 <br><br> Judge: <br><br> Magistrate Judge: <br><br><br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff The NOCO Company, Inc. ("NOCO"), for its Complaint against Defendant Shenzhen Dika Na'er E-Commerce Co., Ltd. ("Shenzhen Dika"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 101 *et seq.*

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

3. Defendant is an alien business entity subject to personal jurisdiction in this Court because it directs its infringing activities to the United States and the State of Ohio through, among other things: marketing its infringing products to residents of the United States and the

State of Ohio through its own website and through the Amazon.com online marketplace, and importing its infringing products into the United States.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c)(3) because Defendant is an alien business entity that imports into, offers to sell and sells the infringing products in the United States.

## PARTIES

5. NOCO is a corporation organized under the laws of the State of Ohio, with its principal place of business in Glenwillow, Ohio.

6. Defendant Shenzhen Dika is, on information and belief, a business entity headquartered in China that does business, among other names, as Suaoki.

## FACTUAL BACKGROUND

### NOCO And Its Genius Boost Jump Starter

7. Founded in Cleveland, Ohio in 1914, and continuously owned and managed by the same family since then, NOCO designs and manufactures, among other products, premium consumer battery chargers, jump starters and other portable power devices used primarily in the automotive and marine industries.

8. Since the early days of automobiles, the prevalent method to recharge a dead car battery has been through the use of "jumper cables," where two cables are run from a live battery in a running vehicle to a dead battery of a second vehicle. The many problems associated with jumper cables are well known, including the fact that a second car with a live battery is needed to perform a jump start, and the danger of sparking and short circuits, especially when the cables from the live battery to the dead battery are misconnected (referred to as "reverse polarity") or not fully connected.

-3-

9. Numerous efforts to improve the jump starting process have been undertaken over the years, which have had significant deficiencies such as lack of portability or failure to solve safety problems, and did not achieve significant popularity.

10. The advent of lithium-ion batteries has permitted the introduction of compact jump starters that do not require the use of a second vehicle, providing consumer convenience as well as certain safety advantages over prior jump starting devices.

11. In 2014, NOCO introduced the Genius Boost® lithium jump starter, which incorporates the patented safety features described herein. A photograph of one model of NOCO's Genius Boost® jumping a dead battery is shown below, and a video demonstrating how the Genius Boost® operates can be found at https://www.youtube.com/watch?v=q7xWhyr-dDI.



12. NOCO manufactures and sells several models of the Genius Boost®, which vary based on, among other things, characteristics of the vehicles to be jump started and consumer preferences.

13. Since its introduction, the Genius Boost® has become known for its safety, ease of use, and reliability, among other features. As a result, the Genius Boost® has enjoyed tremendous popularity, becoming one of, if not the, market-leading compact lithium jump starters in the United States.

### NOCO's U.S. Patent No. 9,007,015

14. On July 3, 2014, NOCO filed a utility patent application covering the Genius Boost®, which was granted and issued on April 14, 2015 as U.S. Patent No. 9,007,015 (the "'015 Patent").

15. The '015 Patent discloses and claims a handheld device for jump starting a vehicle engine that includes a lithium ion battery and a microcontroller (computer) as well as sensors to detect whether (1) the device is connected to both terminals of a vehicle battery, and (2) whether the connection is the proper polarity—*i.e.*, whether or not the positive charging clamp is connected to the positive battery terminal and the negative clamp is connected to the negative terminal. The microcontroller is configured (*i.e.*, programmed) to instruct the charger to start only when the sensors provide signals that the charger is fully connected to the battery, and that the connection is in the correct polarity.

### Defendant's Infringing Conduct

16. NOCO incorporates by reference the allegations of paragraphs 1–15 of this Complaint.

17. Claim 1 of the '015 Patent recites:

> Apparatus for jump starting a vehicle engine, comprising:
>
> an internal power supply;
>
> an output port having positive and negative polarity outputs;

>a vehicle battery isolation sensor connected in circuit with said positive and negative polarity outputs, configured to detect presence of a vehicle battery connected between said positive and negative polarity outputs;
>
>a reverse polarity sensor connected in circuit with said positive and negative polarity outputs, configured to detect polarity of a vehicle battery connected between said positive and negative polarity outputs and to provide an output signal indicating whether positive and negative terminals of said vehicle battery are properly connected with said positive and negative polarity outputs of said output port;
>
>a power switch connected between said internal power supply and said output port; and
>
>a microcontroller configured to receive input signals from said vehicle isolation sensor and said reverse polarity sensor, and to provide an output signal to said power switch, such that said power switch is turned on to cause said internal power supply to be connected to said output port in response to signals from said sensors indicating the presence of a vehicle battery at said output port and proper polarity connection of positive and negative terminals of said vehicle battery with said positive and negative polarity outputs, and is not turned on when signals from said sensors indicate either the absence of a vehicle battery at said output port or improper polarity connection of positive and negative terminals of said vehicle battery with said positive and negative polarity outputs.

18. Shenzhen Dika infringes the '015 Patent in violation of 35 U.S.C. § 271 by making, using, offering to sell and/or importing at least the following models of compact lithium jump starters sold under the brand name Suaoki that have safety features claimed in the '015 patent: K12 8000mAh 300A Peak Jump Starter Lithium Battery Booster Powerpack, T10 400A Peak 12000 mAh Car Jump Starter Battery Booster Powerpack, U10 800A Peak 20000mAh Portable Car Battery Jump Starter, U28 2000A Peak Jump Starter Pack and U3 400A Peak Jump Starter Lithium ion Phone Charger and Battery Booster (herein, the "Infringing Models").

19. For example, each of the Infringing Models meet each element of at least claim 1 of the '015 Patent, as shown below:

>Each of the Infringing Models has a lithium battery pack that acts as an internal power supply.

Each of the Infringing Models has positive and negative polarity outputs on an output connector.

Each of the Infringing Models has an optocoupler sensor that senses the presence of a vehicle battery: when a vehicle battery is connected to the device's terminals, voltage signals from the device's lithium battery pack are immediately raised and a LED showing that a jump start in process is illuminated, indicating that the optocoupler has sensed the presence of a battery.

Each of the Infringing Models has a sensor that outputs a signal indicating whether a battery is connected in proper polarity; for example, when a battery is connected to the device in a reverse polarity state, the sensor causes a red LED indicating a reverse connection to be illuminated and an audible beep to sound.

Each of the Infringing Models has a transistor that controls the device's power switch.

Each of the Infringing Models has a microcontroller that receives signals from the above-described sensors and processes them such that the device is not turned on when the sensors indicate that a battery is not connected to both outputs, or that the connection is in a reverse polarity state.

## CLAIM FOR RELIEF—INFRINGEMENT
## UNDER 35 U.S.C. § 271 OF U.S. PATENT NO. 9,007,015

20. NOCO incorporates by reference the allegations of paragraphs 1–19 of this Complaint.

21. In view of the foregoing, Shenzhen Dika infringes the '015 Patent in violation of 35 U.S.C. § 271(a).

22. NOCO has at all relevant times been in compliance with 35 U.S.C. § 287 to the extent applicable.

23. Shenzhen Dika will continue its acts of infringement unless and until enjoined by this Court.

24. Shenzhen Dika's infringement has caused and, unless enjoined by this Court, will continue to cause serious and irreparable damage to NOCO for which NOCO has no adequate remedy at law.

25. Shenzhen Dika's infringement has also caused monetary damage to NOCO for which NOCO is entitled to be compensated by Defendant.

## **Prayer For Relief**

WHEREFORE, Plaintiff NOCO prays for judgment as follows:

a) that Defendant be found to have infringed the '015 Patent;

b) that Defendant, its officers, directors, employees, agents, and affiliated entities, and all other parties in active participation or privity with them, be preliminarily and permanently enjoined from infringing the '015 Patent;

c) that Defendant be ordered to pay NOCO damages adequate to compensate it for the infringement described in this Complaint; and

d) that NOCO have such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff The NOCO Company, Inc. demands trial by jury for all claims and issues thus triable by right.

-8-

Respectfully submitted,

**VORYS, SATER, SEYMOUR AND PEASE LLP**


*/s/ Patrick R. Akers*
Michael J. Garvin [0025394]
Patrick R. Akers [0095985]
200 Public Square, Suite 1400
Cleveland, OH 44114
(216) 479-6100
(216) 479-6060 (facsimile)
mjgarvin@vorys.com
prakers@vorys.com

Rex W. Miller, II [0085324]
52 E. Gay Street
Columbus, OH 43215
(614) 464-6400
rwmiller@vorys.com

*Attorneys for Plaintiff The NOCO Company*

Case: 1:17-cv-02282-SO Doc #: 1 Filed: 10/30/17 8 of 8. PageID #: 8